**UNITED STATES**

v.

**Staff Sergeant Daniel M. HENNIS, FR539–58–2668, United States Air Force.**

**ACM 30488.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 6 Nov. 1992.

Decided 22 Sept. 1994.

Appellate Counsel for Appellant: Mr. Charles F. Peterson, Esq. (argued), Colonel Terry J. Woodhouse, Colonel Jay L. Cohen, and Lieutenant Colonel Frank J. Spinner.

Appellate Counsel for the United States: Colonel Thomas E. Schlegel (argued) and Colonel Jeffery T. Infelise.

Before HEIMBURG, PEARSON, and SCHREIER, Appellate Military Judges.

## OPINION OF THE COURT

SCHREIER, Judge:

Contrary to his pleas, members convicted appellant of two specifications of indecent acts and one specification of indecent liberties with his daughter, CH. The approved sentence is a bad-conduct discharge, confinement for two years, and reduction to E–1. Appellant alleges seven errors. We will discuss in detail only the issues pertaining to ineffective assistance of counsel and multiplicity. We conclude that specifications 1 and 3 are multiplicious for findings and combine them.

## INEFFECTIVE ASSISTANCE OF COUNSEL

This was a hard-fought case in which appellant stipulated to multiple instances of watching CH shower and touching her breasts and a single instance of masturbating in her presence and placing her hand on his penis. Appellant contested the intent and indecency elements of the charged offenses, claiming the acts were for medical or educational reasons. Appellant alleges trial defense counsel abandoned his role as appellant's advocate resulting in a presumption of ineffectiveness. *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

■ We evaluate claims of ineffective assistance of counsel under two related but different concepts. When appellant alleges specific errors of counsel, he must show both deficient performance and subsequent prejudice which is sufficient to deprive him of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 M.J. 186 (C.M.A.1987). In evaluating for prejudice, one does not focus solely on the outcome. Rather, the test is whether the results of the proceeding are fundamentally unfair or unreliable. *Lockart v. Fretwell,* —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Alternatively, when the circumstances of a case are so egregiously prejudicial that they result in a total breakdown of the adversarial process, ineffectiveness of counsel is presumed without a specific finding of prejudice. *Cronic; Stano v. Dugger,* 921 F.2d 1125 (11th Cir.1991) (en banc). Here, we have no allegation of specific errors; appellant argues there was a total breakdown in the adversarial process and we must apply *Cronic.*

Appellant claims his attorney abandoned him and became an advocate for the government by conceding his guilt during findings and sentencing arguments. During findings argument, defense counsel conceded there was an element of sexual stimulation inherent in masturbation and ejaculation. Later, during argument on sentencing, counsel indicated that an acquittal was the worst thing the members could have done. We will analyze these actions to determine if they result-

ed in a total breakdown of the adversarial process.

■ As a trial strategy, counsel may concede certain elements of an offense or guilt of one of several charges. *United States v. Swanson*, 943 F.2d 1070 (9th Cir. 1991). Appellate courts will not second-guess tactical concessions made for the purpose of retaining credibility with the members, so long as counsel's decisions are reasonable under the circumstances of the case. *United States v. Hansen*, 36 M.J. 599 (A.F.C.M.R.1992) *pet. denied*, 38 M.J. 229 (1993). The reasonableness of counsel's actions are evaluated from counsel's perspective at the time. *Strickland v. Washington.* "Representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Strickland* 466 U.S. at 693, 104 S.Ct. at 2067. Appellant's consent to the allegedly prejudicial trial strategy is another factor we consider in evaluating the reasonableness of counsel's actions. *See Hansen.*

■ The overall conduct of appellant's defense clearly preserved the adversary trial process. Extensive preparation, detailed motion practice, and thorough direct and cross-examinations characterized counsel's performance. Counsel's comments appear to be part of a planned trial strategy. During findings argument, counsel did not concede guilt to the charged offense but only stated the obvious when he said that sexual stimulation was present during the act of masturbation. Yet, having conceded that, he went on to argue the defense theory that the act was not indecent under the circumstances. *See Hansen.* Likewise, counsel's comments during sentencing argument should not be considered in isolation. Appellant had already admitted in his unsworn statement that he was a "child abuser." Numerous witnesses discussed the need for and process of rehabilitation, including the need for appellant to confront his admitted problem. The defense counsel's argument emphasized the need for rehabilitation and counseling for both appellant and his entire family as opposed to punishment for the sake of punishment. This emphasis on rehabilitation, evident throughout the defense sentencing case, began before trial when appellant took actions to obtain rehabilitation for CH and hired an independent counselor to evaluate him. We find the questioned comments were part of a valid trial strategy and did not cause the trial to lose its adversarial character.

■ Appellant's appellate counsel have provided only unsubstantiated allegations that appellant did not concur with this strategy. Appellant's actions both during and after trial indicate at least tacit concurrence with the trial strategy. Appellant admitted during his unsworn statement he was a child abuser, wanted rehabilitation, and had voluntarily subjected himself to the jurisdiction of a Utah state court to obtain rehabilitation for his family. Appellant's unsworn statement further indicated he knew how to complain about the actions of counsel when he said he fired his prior military counsel for not representing his interests. However, appellant did not express disagreement with his counsel's strategy either at trial or in his clemency submissions. We acknowledge that appellant's expression of satisfaction with his counsel carries no weight in an analysis for ineffectiveness. *Cronic*, 466 U.S. at 657, 104 S.Ct. at 2046, 80 L.Ed.2d at 667 (footnote 21). However, we do believe the information is relevant in determining whether the acts now complained of were part of an agreed upon trial strategy. We find that appellant agreed with the trial strategy and that trial defense counsel did not abandon his role as appellant's advocate.

## MULTIPLICITY

Trial defense counsel argued the indecent acts and indecent liberties specifications were multiplicious for findings because they "essentially address one statutory provision which really addresses only one social standard." The military judge denied the motion.

■ The Double Jeopardy Clause of the Fifth Amendment is the base for any multiplicity analysis. There is a constitutional violation of this clause, only when a court, contrary to the intent of Congress, imposes multiple convictions and punishments "for

the same act or course of conduct." *United States v. Teters*, 37 M.J. 370, 373 (C.M.A. 1993). In *Teters*, the Court of Military Appeals adopted the legislative intent/elements test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) for determining multiplicity. The legislative intent controls when it is specifically expressed. *See United States v. Grossman*, 2 U.S.C.M.A. 406, 9 C.M.R. 36 (1953); *United States v. Morris*, 40 M.J. 792 (A.F.C.M.R. 1994). The *Blockburger* statutory elements test is used to determine legislative intent when the statute is silent. *United States v. Weymouth*, 40 M.J. 798 (A.F.C.M.R.1994) (en banc). *See United States v. Neblock*, 40 M.J. 747 (A.F.C.M.R.1994) (en banc).

■ We do not get to the legislative intent/elements test until we determine whether the charges are the result of the same event. *Teters, Neblock.* This factual analysis is necessary to determine if multiple charges arose out of the same event or different events. If the charged offenses are the result of different events they are not multiplicious. But, when the government uses course of conduct pleading and the time frame of one specification duplicates another factually with both alleging conduct which occurred at the same time, the charges may be multiplicious and we must continue the analysis described in *Teters. See Neblock.*

In this case, we have several distinct events which occurred on different dates within the charged period. The time frame and specified location of the alleged misconduct is the same in every instance. Specification 1 alleges indecent liberties by watching CH shower on divers occasions. Specification 2 alleges indecent acts on divers occasions by fondling CH's breasts. These events occurred both in the shower and in other rooms of the house. Specification 3 alleges a single indecent act by exposing his genitals, masturbating, and placing her hand on his penis. The conduct alleged in this specification took place after appellant sent her to the shower despite her protests and while appellant was also pointing out the various parts of the male anatomy and comparing them to the comparable parts on her anatomy. We will examine each combination of specifications to determine if any are multiplicious.

■ First, we look at specifications 1 and 2. Appellant touched CH's breasts both while she was showering and in other rooms of the house. However, there were numerous occasions when he merely watched her shower and other occasions when he touched her breasts outside of the shower. Unlike *Neblock* the conduct charged in neither specification occurred only when accompanied by the other conduct; neither conduct is completely subsumed by the other. The conduct alleged in each specification existed independently of those occasions when there was a merger of the indecent acts (touching her breasts) and the indecent liberties (watching her shower). Therefore, these specifications did not arise out of the same event or "course of conduct" as referenced in *Teters.* These specifications had an independent basis and it is unnecessary to continue with a multiplicity analysis, *i.e.*, to look for the legislative intent.

■ Next, we consider specifications 1 and 3. Appellant watched CH shower on multiple occasions. On one occasion while she was showering, he exposed his genitals, masturbated, and placed her hand on his penis. This was the only time when these latter acts occurred. Neither the specifications nor the evidence specifically indicate appellant watched CH shower during the masturbation incident. However, it is obvious from the evidence that appellant entered the bathroom after he sent her to the shower, opened the shower curtain, proceeded to expose himself, masturbated, and placed her hand on his penis. During this time, he was also pointing out the different parts of the male genitals and comparing them to CH's anatomy. We believe it is unreasonable to assume that he was not also looking at her during this incident and find that he was watching her as she showered. While the gravamen of specification 3 was the masturbation and appellant placing CH's hand on his penis and not appellant watching her shower, the masturbation and penis touching occurred only when she was showering. We find that both specifications occurred at the

870

same time arising out of a single continuous act.

Therefore, we must continue with our multiplicity analysis by reviewing the legislative intent behind the prohibition against indecent acts and indecent liberties with a child. *Teters, Neblock.* As we stated in *Neblock,* we believe the history of the offense, its origins in the District of Columbia Code, and its consistent treatment in the Manual for Courts–Martial indicate there is "but one offense which may be proved in two ways: with a touching (indecent acts) or without (indecent liberties)." *Neblock* at 750. We find that specification 3 has no independent existence apart from the conduct alleged in specification 1 and merge the two specifications.

Finally, we review specifications 2 and 3. Neither the specifications nor the evidence indicate that appellant touched CH's breasts during the masturbation incident or masturbated and caused her to touch his penis at any time when he touched her breasts. Therefore, these specifications did not arise out of the same circumstances and are not multiplicious.

Having found specifications 1 and 3 multiplicious, we must reassess the sentence. The military judge viewed these two specifications as one offense for sentencing and so instructed the members. *See* R.C.M. 1003(c)(1)(C). We are confident we can determine what sentence the members would adjudge in light of the consolidated specification. *United States v. Peoples,* 29 M.J. 426 (C.M.A.1990). We believe they would have adjudged the same sentence. Moreover, we find the sentence as reassessed appropriate. *United States v. Sales,* 22 M.J. 305 (C.M.A. 1986).

We view this analysis as entirely consistent with our decision in *Neblock.* The initial factual analysis of the specifications is the key, as we observed above. This factual analysis is distinct from the "fairly embraced" analysis of *Baker* and its progeny. *United States v. Baker,* 14 M.J. 361 (C.M.A. 1983). *Baker* dealt with offenses charged under different statutes. *Neblock* dealt with multiple specifications of conduct charged under the same offense. Our decision in *Neblock* rested on the unique facts of that case where every incident of indecent liberties (masturbation) accompanied an indecent act (touching). We continue to believe that the prohibitions against indecent acts and indecent liberties with children are but one offense. *Neblock.* But *Neblock* does not mean that indecent acts and indecent liberties must always be charged as one specification where there are separate incidents, or that an individual cannot be convicted of multiple specifications alleging indecent acts and indecent liberties with the same individual if separated by time. In *Neblock,* had the evidence indicated there were incidents of masturbation unaccompanied by a touching and touching unaccompanied by masturbation, the specifications would not have been multiplicious. *Neblock* does not do away with course of conduct pleading in the indecent acts/liberties area, but it requires the government to carefully draft its specifications. Combining indecent acts and indecent liberties in one specification is frequently done as the original specification 3 of this case illustrates, and is not improper.

We have carefully considered the remaining allegations of error and decide them contrary to appellant's claims. The evidence is factually and legally sufficient to support the findings. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). The military judge did not err in admitting prosecution exhibits or refusing to admit defense exhibits. *United States v. v. Clark,* 35 M.J. 98 (C.M.A.1992); *United States v. Rosato,* 32 M.J. 93 (C.M.A.1991). The military judge correctly ruled specification 1 stated an offense. *United States v. Wilson,* 13 M.J. 247 (C.M.A.1982). The jurisdictional issues are decided contrary to appellant's claims. *Weiss v. United States,* —— U.S. ——, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994).

CONCLUSION

We modify the approved findings of guilty by consolidating specifications 1 and 3, and numbering it as specification 1, as follows:

In that STAFF SERGEANT DANIEL M. HENNIS, United States Air Force, 366th

Civil Engineering Squadron, did, in Utah, between on or about 1 April 1989 and on or about 15 October 1991, take indecent liberties with CH, a female 16 years of age, not the wife of said Staff Sergeant Daniel M. Hennis, by watching her shower on divers occasions, and on a single occasion by exposing his genitals to her and masturbating in front of her, and commit an indecent act upon CH on a single occasion by placing her hand on his penis, all with the intent to gratify the sexual desires of the said Staff Sergeant Daniel M. Hennis.

The findings as modified and sentence as reassessed are correct in law and fact and are

AFFIRMED.

Senior Judge HEIMBURG and Judge PEARSON concur.