UNITED STATES

v.

Major JOHN R. LARSON, United
States Air Force.

ACM 35934.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 16 Jan. 2004.

7 Dec. 2006.

Appellate Counsel for Appellant: Colonel Carlos L. McDade, Colonel Nikki A. Hall, Lieutenant Colonel Mark R. Strickland, Major Sandra K. Whittington, and Major Christopher S. Morgan.

Appellate Counsel for the United States: Colonel Gary F. Spencer, Lieutenant Colonel Robert V. Combs, and Major Jin–Hwa L. Frazier.

Before MOODY, Senior Judge, MATHEWS, and THOMPSON, Appellate Military Judges.

## OPINION OF THE COURT

MATHEWS, Judge:

The appellant was convicted, contrary to his pleas, of one specification each of attempted carnal knowledge and attempted indecent acts with a minor, both in violation of Article 80, UCMJ, 10 U.S.C. § 880; one specification of violating a lawful general regulation, in violation of Article 92, UCMJ, 10 U.S.C. § 892; and one specification each of communicating indecent language and using a facility or means of interstate commerce to attempt to entice a minor to engage in sexual activity,[1] both in violation of Article 134, UCMJ, 10 U.S.C. § 934. A panel of officers sentenced the appellant to dismissal from the service, confinement for 9 years, and forfeiture of all pay and allowances. The convening authority approved the dismissal and forfeitures, but reduced the appellant's sentence to confinement from 9 years to 6 years.

On appeal, the appellant assigns the following errors: first, that the military judge erred by denying a defense motion to suppress evidence seized from the government computer assigned for the appellant's use; second, that three of the specifications were multiplicious; third, that his trial defense counsel were ineffective; and finally, that he

---

1. This offense, a violation of 18 U.S.C. § 2422(b), was charged under the "crimes and offenses not capital" clause of Article 134, UCMJ, 10 U.S.C. § 934.

was entrapped by the government.[2] We find no error and affirm.

### Background

The appellant, a 36–year–old married officer, was a satellite communication specialist assigned to Schriever Air Force Base (AFB) in Colorado Springs, Colorado. At the time of the offenses, he was a reservist on extended active duty, temporarily filling in for another officer who was deployed. The office assigned to the appellant was the same one previously occupied by the deployed officer, and still contained some of that officer's personal belongings. The office contained a computer, which was connected to the Internet, allowing the appellant to avail himself of the wide variety of services available there. This computer was programmed to display a banner stating it was government equipment and that users consented to monitoring.

One of the services accessed by the appellant was an instant-messaging (IM) feature of a major internet company. This particular IM service allows users to select a user name and to input data about themselves, including their real name, age, location, gender, and hobbies. The appellant identified himself as "Skeeler" and his location as Colorado Springs. He included his true age on his profile, but not his real name. He identified his sole hobby as "Public sex."

On 10 July 2002, the appellant struck up a conversation with "Kristin," another user of the same IM service. He quickly learned that Kristin was 14 years old, lived in Colorado Springs, and, up until recently, owned a pet hamster. After a few minutes of further conversation, the appellant steered the topic of discussion from rodents to sex. He asked Kristin to send him a picture of herself, and, on viewing it, told her she was a "hottie." He asked Kristin if she'd ever had sex; and when she said no, he asked if she'd like to. He then asked if she masturbated, confiding that he did so "often." Kristin ended the conversation a few minutes later.

A few days after meeting her online, the appellant initiated another conversation with Kristin. He asked if they could meet in person, and suggested going to a nearby park where he claimed they could have sex without being seen. Over the course of the next week or so, the appellant urged Kristin to masturbate and to touch her anus, to describe those acts to him after the fact, and also to describe various aspects of her anatomy to him. As these discussions progressed, the appellant repeatedly discussed his desire to engage in sexual intercourse with Kristin, and asked if she would perform oral sodomy on him and allow him to anally sodomize her. Before they could meet in person, however, the appellant apparently reconsidered, writing "you know, as much as i'd [sic] love to meet you and hook up, i [sic] really don't think we should since it is illegal and i [sic] could get arrested if anyone ever found out . . ."

A little over an hour later, however, the appellant had another change of heart: "you know i'm [sic] dying to hook up with you right?" He asked if Kristin could meet him immediately. When she told him no, he suggested the following day and she agreed. In response to her query "u [sic] mean we can stil [sic] do it?" the appellant wrote, "you have to promise me you won't tell anyone." As fate would have it, however, the appellant's duty schedule intervened, and he was unable to meet with Kristin as planned. He sent her an e-mail apologizing, and assuring her that he would "still like to get together." After more sexually explicit IM conversations, the appellant and Kristin again made plans to meet at a fast-food restaurant in a local mall. Afterward, they agreed, they would go somewhere else and have sex.

This time, the appellant kept his appointment. Upon arriving at the scheduled rendezvous point, however, the appellant was promptly apprehended by local police. It was only after his arrest that the appellant learned "Kristin" was not actually a 14–year–old girl, but was instead an undercover Colorado Springs police officer who kept verbatim copies of all the appellant's conversations with "Kristin." In a search incident to the

---

**2.** This issue was raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

appellant's arrest, the police discovered in the appellant's pocket a receipt for a package of condoms purchased just 15 minutes prior to his arrest.

In the days following the appellant's apprehension by the civilian police, military authorities were notified of what transpired and began their own investigation. The appellant's commander, using a master key to the government office used by the appellant, allowed agents of the Air Force Office of Special Investigations (AFOSI) to seize the government computer in that office. A search of the computer hard drive turned up data files, stored automatically by the Microsoft Windows operating system during the appellant's Internet browsing sessions, indicating the appellant had used the computer to search the Internet for sexually-related material and obtain sexually-explicit images.

### The Appellant's Trial

The appellant was represented at trial by military defense counsel and two civilian defense counsel, Mr. M and Mr. G. The defense team promptly moved, *inter alia*, to suppress evidence taken from the computer used by the appellant on the grounds that the warrantless search of this government equipment violated the appellant's rights under the Fourth Amendment.[3] The military judge denied that motion, and several others that would have had the effect of dismissing all or parts of the government's case, but granted several motions limiting the evidence that the government could present at trial.

The appellant pled not guilty to all Charges and Specifications. In his opening statement to the members, Mr. M offered the following view of the appellant's use of his government computer:

You're going to see that Major Larson was employed and used his computer in an inappropriate fashion. There's no question about that. That's not going to be an issue in this case. It's going to be conceded. Major Larson took his computer and used it inappropriately.

You're going to hear that there is a regulation or rule that you are not to use your government computer for particular purposes.... [I]t's not going to be the defense contention in this case that Major Larson—that it was ever intended for Major Larson to get on the computer and start going into profiles and contacting individuals in chat rooms, and profiles, and downloading photos.... [T]hat is not going to be an issue in this case.

Mr. M concluded his opening statement in a similar vein:

But, when it gets down to the truth of this case—and I'm not going to get up here and try to represent something to you that's not true—Major Larson is guilty of misusing his computer because it was never anticipated by [the appellant's superiors] that he was to use that computer for those reasons. It wasn't, and he shouldn't have done that.... But, he certainly never attempted to do what they're claiming he did. And we're going to ask you at the conclusion of this case to find him not guilty of those charges and specifications.

The members found the appellant guilty of all Charges and Specifications. Although they found the appellant guilty of misusing his government computer in violation of an Air Force instruction, the members excepted some of the language from the Article 92, UCMJ, specification, finding the appellant not guilty of using the computer to view sexually explicit movies.

### Discussion

#### 1. Search of the Government Computer

 The appellant complains the military judge erred by denying his motion to suppress evidence seized from the computer in the government office assigned to the appellant. We review the military judge's decision for an abuse of discretion. *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F.2004). In determining whether the military judge abused his discretion, we consider his findings of law de novo and his findings of fact using a clearly erroneous standard. *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F.1995) (citing *United States v. Cardenas*, 9 F.3d 1139, 1147 (5th Cir. 1993)).

---

3. U.S. CONST. amend. IV.

■ The appellant's commander testified the purpose of the government office, and of the government computer, was to accord the person filling the appellant's position a place and the means necessary to conduct government business. The military judge found that access to the office and to the computer, while limited, was not restricted to the appellant, but also extended to the appellant's commander and various administrators and other personnel assigned to the unit. One of those personnel, of course, would be the deployed officer for whom the appellant was filling in, whose personal belongings remained in the office awaiting his return.

This appears to us to be a case of first impression in some respects. In military jurisprudence, the focus of Fourth Amendment litigation involving computers has primarily been on the expectation of privacy to be afforded to e-mail: personal communications between users, sent via computers using networks or the Internet. *See, e.g., United States v. Long,* 64 M.J. 57 (C.A.A.F. 2006); *United States v. Monroe,* 52 M.J. 326 (C.A.A.F.2000). The search of the government computer here did not focus on such communications. Instead, the AFOSI searched for certain data files, created as part of the "normal operating procedure" of the Microsoft Windows operating system, which record the date, time, and Internet address of web sites visited by the computer user, as well as information about the user account in use on the computer at the time the sites were visited.[4] Such files are like a "documented history of [the user's] travels on the Internet." *United States v. Romm,* 455 F.3d 990, 994 n. 5 (9th Cir.2006).

The military judge concluded the appellant had no expectation of privacy in the contents of the computer. We find no abuse of discretion in his ruling. There is no evidence the appellant was aware the Internet history files existed, and we are unconvinced the appellant could entertain a subjective expectation of privacy in them without such knowledge. Moreover, we conclude such an expectation, even if it existed, would on these facts

not be reasonable. The data in question was recorded automatically, not for law enforcement purposes, but as part of the computer's operating system. The appellant could not expect to keep private automatically-recorded data stored on government property he would reasonably have known would be turned over to another officer on that officer's return from deployment. *See, e.g., United States v. Conklin,* 63 M.J. 333, 337 (C.A.A.F.2006) (finding only a "limited" expectation of privacy in a government computer in a government office); *United States v. Tanksley,* 54 M.J. 169, 172 (C.A.A.F.2000), *overruled in part on other grounds by United States v. Inong,* 58 M.J. 460, 465 (C.A.A.F. 2003) (finding "at best" a "reduced" expectation in personal computer data kept in a government office). *See also United States v. Ziegler,* 456 F.3d 1138 (9th Cir.2006) (no expectation of privacy in employer-owned computers; survey of federal cases). The military judge did not err.

### 2. *Multiplicity*

■ The appellant contends his convictions under Article 80, UCMJ, are multiplicious with the Article 134, UCMJ, offense under Title 18; or, in the alternative, that they represent an unreasonable multiplication of charges. We disagree.

As our superior appellate court recently noted, 18 U.S.C. § 2422(b) represents Congress' "clear choice to criminalize persuasion and the attempt to persuade" minors to engage in sexual activity, "not the performance of the sexual acts themselves." *United States v. Brooks,* 60 M.J. 495, 498 (C.A.A.F. 2005) (quoting *United States v. Bailey,* 228 F.3d 637, 639 (6th Cir.2000)). This offense was completed by the appellant's efforts to cajole "Kristin" to engage in sex acts with him. The fact that the appellant later took steps toward the actual commission of those acts is immaterial.

The Article 80, UCMJ, offenses, however, *did* require steps toward the completion of the acts. Those steps were not taken until several days after the Title 18 offense was

---

4. The government expert testified that the computer was logged in using the account name and password for the user account "larsonjr."

complete: the appellant drove to the mall to meet with "Kristin," purchased a package of condoms and proceeded to the fast-food restaurant to keep his rendezvous. Examining the disparate elements of the Article 80, UCMJ, offenses and the Title 18 offense, as well as the distinct and separate facts needed to establish the appellant's guilt of each, we conclude the offenses are not multiplicious. *United States v. Teters*, 37 M.J. 370, 376–77 (C.M.A.1993). Furthermore, we see no evidence of prosecutorial overreach in the government's charging decision.[5] *Cf. United States v. Quiroz*, 55 M.J. 334, 338–39 (C.A.A.F.2001). There was no unreasonable multiplication of charges here.

### 3. *Ineffective Assistance of Counsel*

The appellant next complains that his counsel, Mr. M, conceded his guilt during opening statement and at other points during the trial. These concessions, the appellant claims, caused him to "completely [rule] out the option of testifying" in his own defense. As a consequence of his counsel's conduct, the appellant questions "how much preparation actually went into" his defense.

We analyze claims of ineffective assistance of counsel under the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel are presumed to be competent. The presumption of competence may be rebutted by a showing of factual errors unreasonable under prevailing professional norms. The appellant bears the burden of establishing that his trial defense counsel were ineffective. *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004); *United States v. McConnell*, 55 M.J. 479, 482 (C.A.A.F.2001). If the conduct of the trial defense team is sufficiently egregious that it results in "a total breakdown of the adversarial process," no further showing of prejudice is required. *United States v. Hennis*, 40 M.J. 865, 867 (A.F.C.M.R.1994) (citing *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)).

When the alleged lapse in judgment or performance does not rise to this level, we test for prejudice. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. *See also United States v. Polk*, 32 M.J. 150, 153 (C.M.A.1991).

Our review of the record leaves us unconvinced that the appellant has carried his burden. Although Mr. M did concede elements of the Article 92, UCMJ, offense, he told the members that the appellant "certainly never attempted to do what they're claiming he did," and urged them to find the appellant not guilty on all of the Charges and Specifications. The members clearly did not take Mr. M's comments as a blanket concession of guilt. Instead, they found the appellant guilty of the Article 92, UCMJ, offense by exceptions, acquitting him of some of the conduct alleged by the government. Thus, we cannot say the adversarial process was completely broken.

In fact, Mr. M and the other members of the appellant's trial defense team conducted an extraordinarily vigorous effort on the appellant's behalf, making over a dozen motions, orally and in writing, challenging every aspect of the government's case. They even took the unusual step, when a new military judge took over the case after a lengthy recess in the proceedings, of asking the new military judge to reconsider and reverse an adverse ruling made by the original judge. Although unsuccessful in most regards, they were able to win the exclusion of some of the government's evidence. There was no unconditional defense surrender, as envisioned by *Cronic* and *Hennis*.

Nor do we find the defense counsel's conduct deficient under *Strickland* and *Polk*. According to an affidavit from Mr. M., provided by government appellate counsel, the defense team concluded there was no plausible defense to the Article 92, UCMJ, charge. Analyzing the entire record, we are unable to find fault with their analysis. The appellant's counsel further concluded that asserting a flimsy defense on this charge—the least serious of those faced by the appellant—

---

5. The appellant was married at the time of these offenses, yet the government did not elect to charge him with the offense of attempted adultery. We express no opinion on the propriety of such a charge, but we are persuaded by its omission that the government exercised restraint in deciding what charges to bring.

would damage their ability to plausibly maintain the appellant's innocence against the more serious charges. We generally will not second-guess such tactical decisions made to seize and retain credibility with the members, particularly when, as here, the trial defense team's efforts are directed toward minimizing their client's punitive exposure. *United States v. Hansen*, 36 M.J. 599, 611 (A.F.C.M.R.1992). The appellant's counsel were not ineffective.

4. *Entrapment*

 Finally, the appellant insists his conduct was the product of entrapment by the government. For the appellant to prevail, there must be evidence the government agents—here, the Colorado Springs police—induced the appellant's behavior, and that the appellant was not otherwise predisposed to commit the offenses. *See* Rule for Courts–Martial 916(g); *United States v. Howell*, 36 M.J. 354, 359 (C.M.A.1993). Inducement, in this context, means more than merely providing the appellant the means or opportunity to commit a crime, or deploying artifice or stratagems such as pretending to be someone other than a government agent. Only "circumstances suggesting overreaching by [the] government ... or any pressuring ... of the appellant to commit these offenses" will suffice. *Howell*, 36 M.J. at 360.

 Examining the record de novo, we find the appellant was not entrapped. The Colorado Springs police officers who created the persona of 14–year–old "Kristin" did nothing to pressure the appellant, nor did they overreach. Indeed, it was the appellant who sought out "Kristin" and initiated a conversation with her, brought up the subject of

sex, and asked her to engage in sex with him. When she seemed reluctant to engage in anal sex, or sex in a public place as the appellant asked, he assured her that he would stop if she wanted him to stop and that they wouldn't be caught. The appellant specified the date and time of their rendezvous, the place they would meet, and even the clothes "Kristin" would wear. In short, far from being pressured, the appellant was firmly in the lead. Moreover, from the biographical information he entered in his user profile to his eager pursuit of "Kristin" in their IM conversations—telling her he "really, really" wanted to get together with her and that he was "dying" to "hook up" for sex—the evidence as a whole shows appellant was plainly acting on his own initiative and in furtherance of his own predispositions. There simply was no entrapment here.[6]

### Conclusion

The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings and sentence are

AFFIRMED.

Senior Judge MOODY participated in this decision prior to his retirement.

---

6. We do not find it necessary to consider the materials seized from the government computer in resolving the question of entrapment. Those materials, which included dozens of user profiles of girls "Kristin's" age, served to undermine the appellant's claims. Because the appellant's proclivities were so clearly displayed by his online conversations with "Kristin," however, exclusion of the seized material would not have affected the result.