# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38996**

————————————

## UNITED STATES
*Appellee*

v.

## Bryant H. PRESTON
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 31 August 2017

————————————

*Military Judge:* L. Martin Powell.

*Approved sentence:* Dishonorable discharge, confinement for 2 years, and reduction to E-1. Sentence adjudged 19 November 2015 by GCM convened at Luke Air Force Base, Arizona.

*For Appellant:* Major Johnathan D. Legg, USAF.

*For Appellee:* Major G. Matt Osborn, USAF; Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, JOHNSON, and KIEFER, *Appellate Military Judges.*

Judge KIEFER delivered the opinion of the court, in which Senior Judges MAYBERRY and JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

KIEFER, Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of one specification of attempted sexual assault of a child who had attained the age of 12 years but had not attained the age of 16 years and one specification of attempted sexual abuse on divers occasions of a

child who had attained the age of 12 years but had not attained the age of 16 years, in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880. The court-martial sentenced Appellant to a dishonorable discharge, confinement for two years, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.[1]

Appellant raises four issues on appeal: (1) whether the evidence is sufficient to support the conviction for attempted sexual assault of a child; (2) whether the military judge erred in omitting a portion of the standard instruction on the affirmative defense of voluntary abandonment for attempted sexual assault of a child; (3) whether the military judge erred in instructing the court-martial concerning what overt acts are required to support a finding of guilty for attempted sexual assault of a child; and (4) whether the evidence is legally and factually sufficient to support the conviction for attempted sexual abuse of a child.[2] We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant was assigned to the 56th Security Forces Squadron at Luke Air Force Base (AFB), Arizona. In January 2015, he attended the Non-Commissioned Officer Academy (NCOA) at Sheppard AFB, Texas. While there, Appellant visited a Craigslist personals page and accessed an advertisement titled, "Dependent Looking for Company." This message had been posted by Special Agent (SA) TK of the Internet Crimes Against Children (ICAC) Task Force of the Air Force Office of Special Investigations (AFOSI) in Northern Virginia. SA TK's posting was part of an investigation into a different Airman at Sheppard AFB, but Appellant responded to the advertisement.

In Appellant's initial response to the ad, he stated, "Im a 6'3 african american man lightskinned hazel eyes with athletic body." He also offered that he was on temporary duty to Sheppard AFB for NCOA and his name was "Bryant." SA TK responded under the pseudonym "Tina," which was associated with the screen name daddyluver21@gmail.com. "Tina" stated, "I live on base with my fam but house sitting for someone, I'm 14 if u interested I'm using yahoo mess daddyluver21 talk to you soon." Appellant responded that he was

---

[1] The convening authority approved Appellant's request to defer the reduction in grade and automatic forfeitures pursuant to Articles 58(a) and (b), UCMJ, 10 U.S.C. §§ 858(a), 858(b).

[2] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

"interested but I don't know you are young and you might get me in trouble." Soon after this initial exchange, Appellant made the first reference to the parties meeting in person by asking, "Where are we going to go? Is anywhere there? You not trying to set me up right. I added you on my yahoo messenger also."

Later the same day, the parties moved their conversation to Yahoo Messenger and "Tina" again noted that she was 14 years old. Appellant continued to press the issue of meeting in person, but AFOSI had not yet planned for a meeting, so "Tina" said she was going to be out of town for the weekend. "Tina" also indicated that she needed to work around her mother for the two to meet in person.

Appellant and "Tina" also began to discuss the issue of "fun," which appeared to be a euphemism for more intimate contact. Appellant, however, was the first party to use the word "sex," and from this point forward, his messages became increasingly graphic, describing the types of sexual acts he wanted to perform on "Tina."

On Monday, 12 January, Appellant messaged "Tina" twice, but there was no response. Appellant again messaged "Tina" on Tuesday, 13 January, and "Tina" responded. Appellant immediately raised the issue of meeting in person. The parties communicated throughout the day on Tuesday, and Appellant continued to describe sexual acts in graphic detail. He also emailed "Tina" a photo of his penis.

On Wednesday, 14 January, Appellant messaged "Tina" asking if she was real and requested that she send a picture. SA TK responded with a photo of a female AFOSI agent represented to be "Tina." Appellant then indicated concern with meeting "Tina" due to her being "young," and he wanted to know if he was being "set up." The following exchange then took place:

> ACC: You are 18 living with your mom
>
> Tina: 18 what you talking about
>
> ACC: You have to say that
>
>    Trust me
>
> Tina: I told you I was 14
>
>    Or you want me to say im 18
>
> ACC: I know. Yes

The parties agreed that they would meet the evening of Wednesday, 14 January at the location where "Tina" was house sitting on base. Appellant originally indicated he was going to drive a friend's car to the house, but as the day progressed, he said the friend had not come back to the dorms, and

the car was not available. Appellant then told "Tina" he was going to walk to the house and continued to communicate with "Tina" while walking across base.

The neighborhood where the house was located had only one entry and exit point from the rest of the base. The house was outfitted with a live feed camera, which was monitored by the AFOSI team leader from inside the house. The team leader saw Appellant walk by the house on the sidewalk. Appellant then turned around and walked back toward the house on the sidewalk. Once in front of the house, Appellant walked onto the driveway toward the front door. The team lead testified that he was not sure if Appellant would come all the way to the door, so he ordered the take down.

The take down team came from inside the house through the front door, which was partially obscured from the driveway by a corner of the house. The leader of the take down team testified that as he rounded the corner he saw Appellant walking up the driveway toward the front door. He told Appellant to stop, and the team arrested Appellant in the driveway.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

Appellant's first and fourth assignments of error allege that the evidence is legally and factually insufficient to support his convictions for attempted sexual assault of a child and attempted sexual abuse of a child, both in violation of Article 80, UCMJ.

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993). The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term "reasonable doubt" does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasona-

ble doubt." *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

There are four elements of attempt: (1) that the accused did a certain overt act; (2) that the act was done with the specific intent to commit a certain offense under the code; (3) that the act amounted to more than mere preparation; and (4) that the act apparently tended to effect the commission of the intended offense. *Manual for Courts-Martial, United States* (2012 ed.) (*MCM*), pt. IV, ¶ 4.b.

### 1. Specification 1 – Attempted Sexual Assault of a Child

The underlying offense of sexual assault of a child has two elements:

1. The accused committed a sexual act on a person; and

2. The person had not attained the age of 16 years old.

*MCM*, pt. IV, ¶ 45b.a.(b). Appellant asserts three reasons why the evidence is factually and legally insufficient to convict him of attempted sexual assault of a child: (1) he was entrapped; (2) none of his actions constituted a substantial step toward completing the underlying offense; and (3) he voluntarily abandoned the underlying offense.

#### a. Entrapment

To succeed on a claim of entrapment, there must be evidence that the criminal design or suggestion to commit the offense originated with the government, not the accused, and the accused was not predisposed to commit the offense. *See* Rule for Courts-Martial (R.C.M.) 916(g); *United States v. Hall*, 56 M.J. 432, 436 (C.A.A.F. 2002); *United States v. Howell,* 36 M.J. 354, 359 (C.M.A. 1993); *see also United States v. Larson*, 64 M.J. 559, 565 (A.F. Ct. Crim. App. 2006).

The essence of entrapment is an improper inducement by government agents to commit the crime. *Howell,* 36 M.J. at 359. Inducement means more than merely providing the appellant the means or opportunity to commit a crime. *Id.* at 358. Instead, the government conduct must "create[ ] a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense . . . [and may take the form of] pressure, assurances that a person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship." *Id.* at 359–60 (citations and internal quotation marks omitted).

The government may use undercover agents and informants to ferret out crime and afford opportunities or facilities for criminals to act upon. *Jacobson v. United States,* 503 U.S. 540, 548 (1992); *see also United States v. Howell*, 36 M.J. 354, 361 (C.M.A. 1993); *United States v. Whittle,* 34 M.J. 206, 208 (C.M.A. 1992). "Artifice and stratagem may be employed to catch those engaged in criminal enterprises." *Sorrells v. United States,* 287 U.S. 435, 441 (1932); *see also United States v. Russell,* 411 U.S. 423, 435–36 (1973). For example, law enforcement may pretend to be someone other than a government agent. *See Howell*, 36 M.J. at 358. Only "circumstances suggesting overreaching by [the] government . . . or any pressuring . . . of the appellant to commit these offenses" will suffice. *Id.* at 360.

The question of predisposition relates to a law-abiding citizen. *Whittle*, 34 M.J. at 208. "A law-abiding person is one who resists the temptations, which abound in our society today, to commit crimes." *United States v. Lubitz*, 40 M.J. 165, 167 (C.M.A. 1994) (citing *United States v. Evans,* 924 F.2d 714, 717 (7th Cir. 1991)). One who accepts an invitation to commit a crime without being offered an extraordinary inducement shows a predisposition to commit the crime. *Whittle*, 34 M.J. at 208.

In litigating the entrapment defense, the accused has the initial burden of showing that the criminal design or suggestion originated with the government. *Hall*, 56 M.J. at 426. Once that hurdle is met, the burden shifts to the Prosecution to prove beyond a reasonable doubt that the criminal design did not originate with the government or that the accused was predisposed to commit the offense. *Id.; United States v. Wheeler*, 76 M.J. 564, 574 (A.F. Ct. Crim. App. 2017); *United States v. Little*, 1994 CCA LEXIS 92, at *5 (A.F. Ct. Crim. App. 18 Oct. 1994) (unpub. op.).

Here, all of the communications between Appellant and "Tina" were through messaging systems. While SA TK posted the advertisement on Craigslist, the ad was not directed at Appellant, and Appellant was the one who chose to respond. In "Tina's" very first message, she indicated she was 14 years old. From that point forward, Appellant was the first to suggest an in-person meeting, the first to use the word "sex," the first to suggest sex between the two, and the first to state in extremely graphic detail the types of sexual acts he wanted to perform on "Tina." While SA TK provided opportunities for Appellant to commit the offense, he did not initiate discussions regarding sexual contact with a child, and he never pressured Appellant to commit any offense. Thus, there was no inducement by a government agent. Appellant made the decisions to respond to the ad, continue communications with a purported 14-year-old girl, and send sexually explicit messages and a photo of his penis to that same 14-year-old girl. He also repeatedly acknowledged the wrongfulness of his conduct. The issue of committing the crime of sexual assault of a child originated with Appellant.

Further, even though SA TK falsely represented facts such as his gender and age, there was no overreaching by the Government. He did not pressure or coerce Appellant to commit the offense of attempted sexual assault of a child. Thus, we find Appellant has failed to satisfy his initial burden of showing that the criminal design originated with the government.[3] Recognizing, however, that the military judge instructed on entrapment, we also analyze the case as if the burden shifted to the Government.

As outlined above, we first find beyond a reasonable doubt that there was no improper Government inducement. We further find beyond a reasonable doubt that Appellant was predisposed to commit the offense. Again, Appellant was the one who first suggested meeting in person. Appellant was the one who initiated the communications regarding sex with a child. Appellant was also the one who walked a mile in 30-degree weather to meet up with a person represented to be a 14-year-old girl house sitting by herself. The Government need not present evidence that Appellant committed or attempted to commit a similar offense on a previous occasion. A person's readiness and willingness to commit the offense is evidence of predisposition. *Whittle*, 34 M.J. at 208.

Here, the Government conduct did not create a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense. Appellant, by his actions, demonstrated his predisposition to commit the underlying offense. Thus, we deny his claim of entrapment.

### b. Substantial Step

Appellant also argues that there is insufficient evidence that he took a substantial step toward the commission of the offense of sexual assault of a child. The third element of attempt is that the overt act amounted to more than mere preparation. *MCM*, pt. IV, ¶ 4.b; *see also United States v. Payne*, 73 M.J. 19, 24 (C.A.A.F. 2014). Military courts have interpreted this third element as requiring that the accused take a "substantial step" toward commission of the crime. *United States v. Jones*, 37 M.J. 459, 461 (C.M.A. 1993) (citing Article 80, UCMJ, 10 U.S.C. § 880); *United States v. Schoof*, 37 M.J. 96, 102 (C.M.A. 1993)). To constitute a substantial step, the overt act must amount to "more than mere preparation." *United States v. Winckelmann*, 70 M.J. 403, 407 (C.A.A.F. 2011). It must be a direct movement towards the commission of the offense MCM, pt. IV, ¶ 4.c.(2). However, the overt act need

---

[3] Although not expressly raised by Appellant, we also find that the Government's conduct in this operation was not so outrageous as to rise to the level of a Constitutional Due Process violation.

not be the last proximate act to the consummation of the offense attempted to be perpetrated. *United States v. Thomas*, 32 C.M.R. 278, 288 (C.M.A. 1962).

As detailed above, over a period of days, Appellant communicated with a person represented to be a 14-year-old girl. He described for this person in graphic detail the types of sexual acts he wanted to perform on her. Ultimately, he walked across base in 30-degree weather to a house where he expected to find this girl alone. Once there, he walked up the driveway toward the front door. We find that the evidence supports the inference beyond a reasonable doubt that Appellant's actions constituted a substantial step toward the commission of the underlying offense of sexual assault of a child.

### c. Voluntary Abandonment

Appellant's final argument with respect to legal and factual sufficiency is that he voluntarily abandoned his plan to sexually assault a child, and thus is not guilty of this attempt offense.

Voluntary abandonment is an affirmative defense to a completed attempt offense. *Schoof,* 37 M.J. at 103; *United States v. Byrd,* 24 M.J. 286, 290 (C.M.A. 1987). "It is a defense to an attempt offense that the person voluntarily and completely abandoned the intended crime, solely because of the person's own sense that it was wrong, prior to the completion of the crime." *MCM*, pt. IV, ¶ 4.c.(4). The defense is raised when the accused abandons his effort to commit a crime "under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." *Schoof,* 37 M.J. at 104 (citation omitted); *United States v. Rios,* 33 M.J. 436, 440–41 (C.M.A. 1991). Voluntary abandonment does not exist "if the abandonment results, in whole *or in part*, from other reasons, for example, *the person feared detection or apprehension*, decided to await a better opportunity for success, was unable to complete the crime, or encountered unanticipated difficulties or unexpected resistance." *MCM*, pt. IV, ¶ 4.c.(4) (emphasis added).

The existence of abandonment as a defense "necessarily implies that a punishable attempt precedes it." *United States v. Collier,* 36 M.J. 501, 510 (A.F.C.M.R. 1992). "A person who has performed an act which is beyond the stage of preparation and within the zone of attempt may nevertheless avoid liability for the attempt by voluntarily abandoning the criminal effort." *Byrd,* 24 M.J. at 290 (citation omitted). Given that it is an affirmative defense, the burden rests on the Prosecution, once it is put into controversy, to rebut the defense beyond a reasonable doubt. R.C.M. 916(b)(1).

We find that Appellant did not voluntarily abandon his plan to meet and have sex with a person he understood to be 14 years old, solely because of his own sense that it was wrong. In Appellant's second message to "Tina," after finding out that she was 14 years old, he wrote, "I am interested but I don't

know you are young and you might get me in trouble." Appellant's very next message states, "Where are we going to go? Is anywhere there? You not trying to set me up right." Appellant's concern about getting caught was repeated over and over throughout the communications. In fact, he went so far as to tell "Tina" to lie about her age so he could meet with her more safely. Appellant never once indicated that he felt meeting a 14-year-old girl for sex was wrong.

Further, Appellant never really abandoned his plan. Instead, he was arrested in the driveway of the house where he had planned to meet this 14-year-old girl alone. Effectively he was unable to complete the underlying offense of sexual assault of a child because law enforcement stopped him.[4] Thus, we find beyond a reasonable doubt that the evidence does not support Appellant's claim of voluntary abandonment.

Appellant responded to an advertisement on Craigslist by a purported military dependent at Sheppard AFB. Within the first communications, this person represented that she was a 14-year-old girl named "Tina." Appellant then pursued "Tina" for an in-person meeting, raised the issue of sex between them, and walked across base to meet her alone before he was arrested by law enforcement. We believe, considering the evidence in the light most favorable to the Prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Turner*, 25 M.J. at 324; *see also Humpherys*, 57 M.J. at 94.

Additionally, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the Appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325; *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000).

### 2. Specification 2 – Attempted Sexual Abuse of a Child[5]

The same four elements of attempt apply to the offense of sexual abuse of a child. The elements of the underlying offense of sexual abuse of a child are:

1. The accused committed a lewd act upon a person; and

2. The person was a child who had not attained the age of 16 years.

---

[4] We recognize that Appellant was also unable to complete the underlying offense because Tina was an undercover agent and not a 14-year-old girl, and hence he was charged with attempted sexual assault of a child.

[5] This issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

*MCM*, pt. IV, ¶ 45b.a.(c).

The military judge defined a lewd act as:

> intentionally exposing one's genitalia, anus, or buttocks, to a child by any means, including via any communication technology, with an intent to arouse or gratify the sexual desire of any person; or, intentionally communicating indecent language to a child by any means including via any communications technology, with an intent to arouse or gratify the sexual desires of any person.

The military judge further defined indecent language as language which is:

> grossly offensive to the community sense of modesty, decency, or propriety, or shocks the moral sense of the community, because of its tendency to incite lustful thought. Language is indecent if it tends reasonably to corrupt morals or incite lustful thought, either expressly or by implication from the circumstances under which it was spoken.

The basis for the offense of sexual abuse of a child was that Appellant sent sexually explicit messages and a photo of his penis to "Tina," a person he believed to be 14 years old. There is no question that Appellant was informed that Tina was 14 years old. Appellant repeatedly commented on Tina's age and that he might get in trouble for communicating with her. At one point, he tried to get "Tina" to lie about her age, which further evidences his belief of her age and the wrongfulness of his conduct.

There is also no question that Appellant sent sexually explicit messages using indecent language to Tina, including descriptions of the various sexual acts he wanted to perform on her.[6] The evidence additionally supports that Appellant sent a photo of his penis to a person he understood to be 14 years old. We have considered whether Appellant had the specific intent to send these messages and photos to a person under 16 years of age and find that the evidence clearly supports such a conclusion. We further find that the acts of sending the messages and photo amounted to more than mere preparation and tended to affect the commission of the underlying offense. In fact, the underlying offense of sexual abuse of a child would have been committed had

---

[6] These messages include language such as "beg for daddys big black c[**]k," and "I just going to put my d[**]k in you."

"Tina" actually been a 14-year-old girl. We also find that no defense applies to Appellant's conduct.

Accordingly, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Turner*, 25 M.J. at 324; *see also Humpherys*, 57 M.J. at 94. Further, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the Appellant's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325; *see also Reed*, 54 M.J. at 41. Thus, Specification 2 is legally and factually sufficient.

### B. Voluntary Abandonment Instruction

Appellant's second assignment of error is that he was prejudiced by the military judge's failure to give a proper voluntary abandonment instruction specifically related to the offense of attempted sexual assault of a child. Appellant argues that his trial defense counsel requested an instruction, but the instruction given failed to include the following portion from the *Military Judges' Benchbook*:

> The burden is on the prosecution to establish the [accused's] guilt beyond a reasonable doubt. Consequently, unless you are satisfied beyond a reasonable doubt that the [accused] did not completely and voluntarily abandon his criminal purpose, you may not find the accused guilty [of the target offense.]

Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, ¶ 5-15 (10 Sep. 2014). Appellant acknowledges his trial defense counsel did not object to the following instruction which was given:

> The defense of voluntary abandonment has been raised by the evidence with respect to the offense of attempted sexual assault of a minor as alleged in specification 1 of the charge. In determining this issue, you must consider all the relevant facts and circumstances, including, but not limited to, any evidence you may have heard with respect to whether or not the accused approached the door of the house in question before being apprehended.

> If you are satisfied beyond a reasonable doubt of each of the elements of attempted sexual assault of a minor, you may not find the accused guilty of this offense if, prior to the completion of the offense of sexual assault of a minor, the accused abandoned his effort to commit that offense under circumstances manifesting a complete and voluntary renunciation of the accused's criminal purpose.

> Renunciation of criminal purpose is not voluntary if it is motivated in whole or in part by circumstances not present or apparent at the inception of the accused's attempt that increases the probability of detection or apprehension or makes more difficult the accomplishment of the criminal purpose. Renunciation is not voluntary if it is motivated in whole or in part by fear of immediate detection or apprehension, by the resistance of the victim, or by the inability to commit the crime.

> Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct until a more advantageous time.

We review de novo the propriety of the military judge's instructions to the members. *United States v. Ober,* 66 M.J. 393, 405 (C.A.A.F. 2008). The military judge bears the primary responsibility for ensuring that the court members are properly instructed on the elements of the offense as well as potential defenses, and his duty is to provide an accurate, complete, and intelligible statement of the law. *Id.*; *United States v. Medina*, 69 M.J. 462, 465 (C.A.A.F. 2011); *United States v. Wolford,* 62 M.J. 418, 419 (C.A.A.F. 2006). A defense counsel's failure to object does not constitute waiver as waiver does not apply to required instructions such as affirmative defenses. *United States v. Stanley,* 71 M.J. 60, 63 (C.A.A.F. 2012) (citations omitted). When instructional errors have constitutional implications, as in instructions involving affirmative defenses, then the error is tested for prejudice under a "harmless beyond a reasonable doubt" standard. *United States v. Behenna,* 71 M.J. 228, 234 (C.A.A.F. 2012) (citing *United States v. Lewis,* 65 M.J. 85, 87 (C.A.A.F. 2007)). We must be convinced beyond a reasonable doubt that the error did not contribute to the appellant's conviction in order to find such a constitutional error harmless. *Id.*

Voluntary abandonment only applies "under circumstances manifesting a complete and voluntary renunciation of [an accused's] criminal purpose." *Schoof,* 37 M.J. at 104. Here, we find no evidence that Appellant "voluntarily and completely abandoned the intended crime, solely because of [his] own sense that it was wrong." *MCM,* pt. IV, ¶ 4.c.(4). Appellant argued at trial that the AFOSI team leader thought Appellant might leave the area of the house before reaching the front door, and thus Appellant abandoned his criminal enterprise. The AFOSI agent who personally observed Appellant and took him into custody, however, testified that Appellant was in the driveway walking toward the front door of the house. Neither witness testified that Appellant was in fact leaving the area at the time he was arrested. Thus, the totality of the evidence belies any argument that Appellant voluntarily abandoned his effort to commit the underlying offense. Further, no evidence supports that Appellant abandoned his effort to commit the offense due to his own sense that what he was doing was wrong. Instead, Appellant recognized

the wrongfulness of his conduct from the very start, repeatedly acknowledged the wrongfulness throughout the criminal enterprise, and only ended his criminal acts upon arrest by law enforcement. The evidence clearly shows that Appellant's main concern was being caught, which does not raise the defense of voluntary abandonment.

We recognize, however, that the military judge gave a voluntary abandonment instruction. Accordingly, we further analyze the instruction provided to ensure that it was not inaccurate, confusing, or misleading. *Ober,* 66 M.J. at 405.

In this case, Appellant argues that the absence of a portion of the instruction improperly shifted the burden to Appellant to prove the affirmative defense of voluntary abandonment. In support of this argument, Appellant cites to *United States v. Reed*, No. ACM 37632, 2013 CCA LEXIS 441, at *13 (A.F. Ct. Crim. App. 22 May 2013). In *Reed*, we found reversible error and set aside a specification based in part on a similarly incomplete voluntary abandonment instruction. *Id*. at *16. *Reed* is distinguishable, however, as our finding of prejudicial error in that case was primarily based on the arguments of counsel, which we held confused both the application of the voluntary abandonment instruction as well as the burden of proof. "The trial counsel's findings argument could easily have led the panel to incorrectly believe that voluntary abandonment was not applicable once the crime of attempted receipt had been completed." *Id.* at *14. "[T]he defense counsel's argument implied that the defense carried the burden." *Id.* at *16.

Here, contrary to *Reed*, neither counsel mentioned the words "voluntary abandonment" at all during their findings arguments.[7] Additionally, as in *Reed*, "the military judge's instructions provided the members with the correct state of the law." *Id.* at *14–15. The instruction given to the members regarding voluntary abandonment correctly set forth all of the elements of that defense and circumstances under which it applies. Further, considering the totality of the instructions, the military judge stated multiple times that the burden of proof beyond a reasonable doubt was on the Government. There was nothing in the voluntary abandonment instruction or other circumstanc-

---

[7] Trial defense counsel used the word "abandoned" one time in findings argument when asserting that Appellant did not have the specific intent to commit the offense of sexual assault on a child. Within this same portion of the argument on specific intent, trial defense counsel noted, "[i]f you had any doubts about what happened in front of that house, you should resolve those in favor of [Appellant]." Thus, as opposed to confusing the standard, trial defense counsel reminded the members that doubt should be resolved in favor of Appellant.

es of this case that confused that basic truth. Thus, based on the facts of this case, we find the military judge did not err in failing to provide a portion of the *Military Judges' Benchbook* voluntary abandonment instruction.

Further, we are convinced beyond a reasonable doubt that, even if it was error to omit a portion of the voluntary abandonment instruction, such error did not contribute to the appellant's conviction, and therefore was harmless beyond a reasonable doubt. *Lewis*, 65 M.J. at 87.

### C. Overt Act Instruction

Appellant also argues that it was improper for the military judge to instruct on overt acts that were not alleged in the specification for attempted sexual assault of a child. Military case law has long accepted the pleading of attempts under Article 80, UCMJ, 10 USC § 880, without alleging the overt act. *United States v. Marshall,* 40 C.M.R. 138, 142–43 (C.M.A. 1969); *see also United States v. Garner*, 28 M.J. 634 (A.F.C.M.R. 1989). Nothing in the *Manual for Courts-Martial* requires—either implicitly or expressly—that that the overt act must be pleaded as part of the specification in an attempt. *United States v. Mobley*, 31 M.J. 273, 278 (C.M.A. 1990).

Here, Appellant opposed the military judge's proposed instruction informing the members that:

> you must be convinced by legal and competent evidence beyond a reasonable doubt . . . the accused did certain acts, that is, departing his dormitory room, walking toward an address provided by Tina, and approaching a home located at that address.

Trial defense counsel objected to the military judge supplying the possible overt acts needed to prove the offense. However, "alleging an overt act is unnecessary in pleading an attempt specification under court-martial procedure." *Garner*, 28 M.J. at 635; *see also United States v. Marshall,* 40 C.M.R. 138, 143–44 (C.M.A. 1969). The only question is whether the evidence supported the overt acts the military judge chose to include in the instruction.

In this case, the Government offered testimony that Appellant left his dorm room, walked across base to an address "Tina" provided, and approached the house at that address. Thus, it was not error for the military judge to offer that evidence as possible overt acts related to the alleged attempt offense. It was then up to the members to determine whether any of the acts were proven beyond a reasonable doubt and whether "they were a substantial step and a direct movement toward the commission of the intended offense," as the military judge further instructed. The military judge also defined substantial step as "one that is strongly corroborative of the accused's criminal intent and it indicative of his resolve to commit the offense."

Given the law and the facts of this case, we find no error in the military judge's instructions on overt acts.

### III. CONCLUSION

The findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court